United States District Court
Southern District of Texas
**ENTERED**
June 17, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTONIO BERMUDEZ, | § | |
| (TDCJ #1911288) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-18-3387 |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Antonio Bermudez, a Texas state inmate, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2014 state court conviction for aggravated assault of a family member with a deadly weapon. (Docket Entry No. 1). The respondent, Bobby Lumpkin,[1] answered with a motion for summary judgment, which was subsequently amended, arguing that Bermudez is not entitled to the relief he seeks. (Docket Entry Nos. 9, 19). Bermudez filed a response. (Docket Entry No. 33). Based on careful consideration of the pleadings, the record, and the applicable law, the Court concludes that Bermudez has not stated meritorious grounds for federal habeas relief, denies his section 2254 petition, and, by separate order, enters final judgment. The reasons are explained below.

---

[1]The previously named respondent in this action was Lorie Davis. On August 11, 2020, Bobby Lumpkin succeeded Lorie Davis as Director of the Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Lumpkin "is automatically substituted as a party."

## I.   **BACKGROUND**

### A.   **Procedural Background**

Bermudez is currently in custody of the Texas Department of Criminal Justice—Correctional Institutions Division ("TDCJ") as a result of a felony conviction in Harris County Cause Number 1370940.   A jury found Bermudez guilty as charged of one count of aggravated assault on a family member with a deadly weapon.   (Docket Entry No. 10-11, at 220-22).   At sentencing on February 6, 2014, Bermudez pleaded true to one enhancement,[2] and the court sentenced him to 60 years in prison. (*Id.*).   On March 4, 2014, Bermudez filed a motion for new trial, contending that he was denied the effective assistance of counsel because trial counsel had a hearing impairment that rendered him unable to properly respond to the trial proceedings.   (*Id.* at 234-40).   The trial court denied the motion without a hearing on March 27, 2014.   (*Id.* at 250).

The First Court of Appeals of Texas affirmed Bermudez's conviction on direct appeal.   *See Bermudez v. State*, 471 S.W.3d 572 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).   The Texas Court of Criminal Appeals refused Bermudez's petition for discretionary review.   *Ex parte Bermudez*, PD-1074-15 (Tex. Crim. App. Dec. 16, 2015).   The United States Supreme Court denied Bermudez's petition for writ of certiorari on May 23, 2016.   *Bermudez v. Texas*, 136 S. Ct. 2381 (2016).

On May 12, 2017, Bermudez filed an application for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure.   (Docket Entry No. 10-21,

---

[2]The State abandoned a second enhancement.   (Docket Entry No. 10-17, at 24).

2

at 6-25).  On September 12, 2018, the Court of Criminal Appeals denied the application, without written order or hearing, on the findings of the trial court.  (Docket Entry No. 10-20; *Ex parte Bermudez*, Writ No. 88,612-01).

In his federal petition, executed on September 13, 2018, Bermudez raises the following grounds for federal habeas relief:

1.   Ineffective assistance of trial counsel by:

   a.   Falsely telling Bermudez that counsel could get the charge reduced or dismissed because he was in good standing with the trial judge;

   b.   Falsely telling Bermudez that he could not testify during the guilt/innocence phase of the proceedings because of his prior convictions;

   c.   Failing to file a motion to exclude Bermudez's prior convictions;

   d.   Failing to provide discovery to Bermudez and consult him about trial strategy;

   e.   Incorrectly advising Bermudez that he could not be convicted of aggravated assault because the State could not prove that he used a weapon;

   f.   Advising Bermudez to elect sentencing by the judge because counsel had a good relationship with the judge;

   g.   Refusing to permit Bermudez to make a statement of remorse during the punishment phase of the proceedings;

   h.   Refusing to call character witnesses to testify in the punishment

3

phase;

i.      Failing to ensure that counsel's hearing impairment did not affect the

trial;

j.      Failing to be adequately prepared for trial; and

k.      Failing to research and prepare for legal arguments on issues raised at

trial.

2.      Denial of due process and a fair trial when Bermudez was shackled during

trial.

3.      Denial of Bermudez's constitutional right to testify in his own defense.

4.      Ineffective assistance of appellate counsel by failing to include all of trial

counsel's deficiencies in the motion for new trial.

5.      Denial of due process by denying Bermudez's motion for new trial without

a hearing.

(Docket Entry No. 1, at 11-19).  The respondent argues that the petition should be denied

because Bermudez's claims are without merit.[3]  (Docket Entry No. 19).

## B.      Factual Background

In December 2012, Juana Zapata was living in Houston with her two sons, Antonio

---

[3]The respondent originally filed a motion for summary judgment arguing that Bermudez's federal petition was untimely under 28 U.S.C. § 2244(d).  (Docket Entry No. 9).  Upon learning that Bermudez had filed a petition for writ of certiorari in the United States Supreme Court, the respondent sought leave to file an amended motion, (Docket Entry No. 14), which the Court granted.  (Docket Entry No. 15).  Bermudez appealed the order granting leave to file the amended motion.  (Docket Entry No. 20).  That appeal was ultimately dismissed.  *See Bermudez v. Davis*, No. 19-20240, slip op. (5th Cir. May 20, 2019).

("Tony") and Miguel, whom she shared with Bermudez. (Docket Entry No. 10-14, at 25-27). Zapata and Bermudez were estranged, and he was working and living in San Antonio. (*Id.* at 26-31). On the evening of December 12, Zapata was home with her sons when Bermudez and his niece, Graciela Cortinas, showed up unexpectedly. (*Id.* at 25-27, 35). Zapata immediately noticed that Bermudez had been drinking and looked angry. (*Id.* at 35-36, 103).

After a brief exchange of words, Bermudez began to assault Zapata. (*Id.* at 36-38). Bermudez hit Zapata with his fists and grabbed her by the hair. (*Id.*). He then threw her on the floor, got on top of her, and repeatedly hit her with a closed fist. (*Id.* at 40). Zapata began bleeding from her mouth and nose. (*Id.* at 39). Bermudez dragged Zapata to her feet and pushed her against the table and the china cabinet. (*Id.* at 41). As he did, he threatened to kill her and throw her body in the river. (*Id.* at 42).

Zapata begged her son Tony to call the police and to get their neighbors to help. (*Id.* at 40-41). Tony got a cell phone and called the police. (Docket Entry No. 10-15, at 58). Cortinas also called the police to try to end the fight. (*Id.* at 96).

During those calls, Bermudez dragged Zapata outside the house and pulled her towards his car while threatening to shoot her. (Docket Entry No. 10-14, at 43). Zapata believed that Bermudez had a gun in his car. (*Id.*). When Bermudez was unable to get the car door open, he dragged Zapata towards an outbuilding behind the house, pulling her by her hair and continuing to hit her with a closed fist. (*Id.* at 50).

Zapata's neighbor arrived on the scene and tried to intervene, but Bermudez continued to assault Zapata. (*Id.* at 52). He dragged Zapata back into the house through

5

the kitchen door, grabbed a knife from the kitchen counter, and held it to Zapata's neck. (*Id.* at 53-54, 59). At that point, the police arrived, and Zapata was able to escape. (*Id.* at 73).

On cross-examination, Zapata admitted that neither of the 9-1-1 callers reported that Bermudez had a knife. (*Id.* at 79). However, she testified that she did not see anyone else in the house when Bermudez grabbed the knife. (*Id.* at 129-31). Zapata also admitted that she told the police, the EMTs, and the hospital staff that she was afraid that Bermudez had a gun, but she never mentioned the knife. (*Id.* at 106).

Bermudez's 10-year-old son Tony testified that he saw his father grab his mother by the hair and punch her, hit her, and later hold a knife to her. (Docket Entry No. 10-15, at 58-60). However Bermudez's niece, Cortinas, testified that she never saw Bermudez with a knife. (*Id.* at 113). She testified that the jacket Bermudez was wearing that night had a line of silver buttons down the sleeve that could possibly have been mistaken for a knife. (*Id.* at 127).

Deputy Jose Peña of the Harris County Sheriff's Office (HCSO) was the first officer on the scene. (Docket Entry No. 10-14, at 168). When he arrived at the house, he saw people gathered outside, and he heard yelling and screaming coming from inside the home. (*Id.*). Peña entered the house through the back door and saw Bermudez holding Zapata's hair with one hand and holding a knife to her neck with the other. (Docket Entry Nos. 10-14, at 169-70; 10-15, at 28). Peña, with his weapon drawn, told Bermudez to drop the knife. (Docket Entry No. 10-14, at 169). After several tense moments, Bermudez dropped the knife and surrendered to Peña. (*Id.* at 170-71).

Deputy David Cortazar of the HCSO arrived at the scene after Bermudez was in custody and while Zapata was being treated by EMTs. (*Id.* at 144-45). He spoke with Zapata while she was being treated (*Id.* at 155), and she never said anything about Bermudez having a gun. (*Id.* at 159-60). However, he testified that both Zapata and her son Tony told him that Bermudez had used a knife. (*Id.* at 162).

Zapata was treated at the hospital for a broken nose and finger, along with numerous cuts and bruises, a large bite on her arm, and a broken tooth. (*Id.* at 59).

## II.  LEGAL STANDARDS

### A.  Anti-Terrorism and Effective Death Penalty Act

Bermudez's petition for federal habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under AEDPA, federal habeas relief based on claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Review under AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not simply point to legal error in the state court's "decision." *White v.*

*Woodall*, 572 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice for federal relief under AEDPA).  AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal citation and quotation marks omitted).  "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." *Woodall*, 572 U.S. at 419-20 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under section 2254(d)(1) only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *Id.* at 97-98.  Under the "contrary to" clause, this Court may grant habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted).  To constitute an "unreasonable application" of clearly established federal law, the state court's decision "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 572 U.S. at 316 (internal citation and quotation marks omitted).

A state court's factual determinations are also entitled to deference on federal

habeas corpus review.  Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  When a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "It is not enough to show that a state court's decision was incorrect or erroneous. [Rather, a] petitioner must show that the decision was objectively unreasonable, 'a substantially higher threshold[,]'" requiring "the petitioner [to] show that 'a reasonable factfinder *must* conclude' that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (quoting *Blue v. Thaler,* 665 F.3d 647, 654 (5th Cir. 2011)).  A federal habeas court "may not characterize these state court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id.*  This deference is "especially strong when the state habeas court and the trial court are one in the same[,]" as they were in this case.  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (collecting cases); *see also Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts.").

### B.    Summary Judgment

The respondent in this case has moved for summary judgment. Summary judgment is proper when the record shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ordinary civil cases, a district court considering a motion for summary judgment must construe disputed facts in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). And, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark*, 202 F.3d at 764.

However, AEDPA limits both the nature and availability of habeas review, and federal courts apply general summary judgment standards only insofar as they do not conflict with the language and intent of AEDPA. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (holding that Rule 56 "applies only to the extent that it does not conflict with the habeas rules"), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). Generally, in ruling on a motion for summary judgment the court resolves any doubts and draws any inferences in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson,* 477 U.S. at 255). However, section 2254(e)(1) requires this court to presume that that the state court factual findings are correct, overriding the general summary judgment rule. *Smith,* 311 F.3d at 668. The petitioner must rebut the presumption of correctness by clear and convincing evidence; otherwise, the court will presume that the factual determinations of the state court are correct. *Id.*

10

C.   *Pro Se* Pleadings

Finally, Bermudez is a *pro se* petitioner.   *Pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings lawyers file.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding that filings by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers").   This Court broadly interprets Bermudez's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## III.   DISCUSSION

### A.   Ineffective Assistance of Trial Counsel

Bermudez contends that he was denied effective assistance of trial counsel in violation of the Sixth Amendment.   Claims concerning allegedly ineffective assistance of counsel, whether at trial or on direct appeal, are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).   *Strickland* requires a habeas petitioner to show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.   *Id.* at 687.   "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."   *Id.*

To establish the deficient performance prong of *Strickland*, a habeas petitioner must demonstrate that his attorney's performance fell below an objective standard of reasonableness.   *Id.* at 687-88.   To meet this standard, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   *Id.* at 687; *see also Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 775

11

(2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied") (citation omitted). "[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's [sic] the benefit of the doubt, . . . but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted) (quoting *Cullen*, 563 U.S. at 196). Therefore, "[o]n habeas review, if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

In addition to showing deficient performance, the habeas petitioner alleging ineffective assistance of counsel must also show that he was prejudiced by that deficient

performance.  *See Strickland*, 466 U.S. at 687, 692.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently."  *Richter*, 562 U.S. at 111.  "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different."  *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 696).  "The likelihood of a different result must be substantial, not just conceivable."  *Id.* at 112.

Moreover, ineffective assistance of counsel claims alleged in a federal habeas petition   raise mixed questions of law and fact that must be analyzed under the "unreasonable application" standard of section 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Thus, AEDPA does not permit this Court to conduct a de novo review of trial counsel's conduct.  *See Richter*, 562 U.S. at 101-02.  Instead, the "pivotal question" for this Court is "whether the state court's application of the *Strickland* standard was unreasonable."  *Id.* at 101.  In that instance, this Court's review becomes "'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)."  *Rhoades*, 852 F.3d at 434; *see also Woods v. Etherton*, —— U.S. ——, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective assistance of counsel claims is "doubly deferential" "because

counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and because federal courts must "afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013))); *see also Richter*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Burt*, 571 U.S. at 20 (quoting *Richter*, 562 U.S. at 103).

### 1.    False statements regarding relationship with judge (Grounds 1(a) and 1(f))

Bermudez first claims that trial counsel Jon Thomas provided ineffective assistance by promising Bermudez that he could get the charge against Bermudez reduced or dismissed because Thomas was in good standing with the trial judge. Bermudez also alleges that Thomas advised him to elect sentencing by the judge because of Thomas's good relationship with the judge. Bermudez alleges that these falsehoods resulted in him receiving a harsher sentence than he should have received.

Thomas filed an affidavit in the state habeas proceedings responding to this claim:

> I have never guaranteed a case result for any client and I did not guarantee Mr. Bermudez that the charges would be reduced to a misdemeanor offense. Mr. Bermudez claimed that he did not have a knife during the occurrence with his wife. I would have explained that if the prosecution was unable to prove that a deadly weapon was involved then the charge could be reduced either by a plea bargain or at trial.
>
> . . .
>
> I did not tell Mr. Bermudez that I was in "good standing" with Judge

14

> Krocker or have any other special relationship with her.  If Mr. Bermudez inquired about my history with the court, I would have explained that I have appeared before the court numerous times, conducted evidentiary hearings and tried jury trials before Judge Krocker and other visiting judges in the court.  In regard to Mr. Bermudez's election of punishment, his decision to go to judge for punishment was based on his criminal history and the fact that he was indicted as a habitual offender facing 25-99 years in TDCJ.  I would have explained that as a general rule juries tend to be more erratic during sentencing while judges are not swayed or shocked by a defendant's criminal history.  Based our discussions Mr. Bermudez elected to have Judge Krocker assess punishment in the event that he was found guilty.

(Docket Entry No. 10-21, at 154-55).

After reviewing Bermudez's allegations, Thomas's affidavit, and its own recollection of the trial proceedings, the state habeas court found the facts alleged in Thomas's affidavit to be credible and true.  (*Id.* at 183).  Relying on that credibility determination, the state habeas court found that Thomas had not made promises to Bermudez about the charges and that Thomas had properly explained the options of having the judge or jury assess punishment.  (*Id.* at 185-86).  The court also found that Thomas had not falsely claimed "good standing" with the judge as a reason for Bermudez to have the judge determine punishment.  (*Id.* at 186).  Based on these findings, the state habeas court concluded that Bermudez had failed "to prove by a preponderance of evidence that Thomas's performance fell below an objective standard of reasonableness, or that but for the unprofessional performance of counsel there is a reasonable probability that the outcome [of] the case would have been different."  (*Id.* at 189).

The state habeas court's factual findings that Thomas did not make promises to Bermudez based on alleged "good standing" with the trial judge are not objectively unreasonable.  Nor are they based on an unreasonable determination of the facts in light of

15

the evidence presented in the state court proceedings.  In his response to the respondent's motion, Bermudez contends that Thomas's affidavit should have been deemed not credible because Thomas was suspended from the Texas Bar after the trial.  (Docket Entry No. 33, at 12).  In effect, Bermudez asks this Court to substitute its interpretation of the facts for that of the state habeas court, which this Court cannot do.  Having failed to show that the state habeas court's decision to reject this claim was objectively unreasonable, Bermudez is not entitled to relief on this claim.

### 2.     Denial of right to testify (Grounds 1(b), 1(g), and 3)

Bermudez alleges in grounds 1(b), 1(g), and 3 that he was denied his right to testify in both the guilt/innocence phase of trial and the punishment phase, which he alleges constitutes an "intrinsically harmful" violation of his Fifth and Fourteenth Amendment rights.  (Docket Entry No. 2, at 26-29).  Bermudez also alleges that Thomas "forced" him to forego his right to testify by failing to move to exclude evidence of his prior convictions.

There is no question that a criminal defendant has a constitutional right to testify on his own behalf.  *See Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987).  This right, like other constitutional rights, may be waived by the defendant if done knowingly and voluntarily. *See United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002).  Further, only the defendant may waive this right; counsel may not waive the right on the defendant's behalf.  *Id.* at 454 (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).  When a defendant asserts that counsel interfered with his right to testify, the claim is appropriately considered as an ineffective assistance of counsel claim.  *Id.* at 452-53 (citing *Sayre v. Anderson*, 238 F.3d

16

631, 634 (5th Cir. 2001)). Therefore, Bermudez's three claims relating to his right to testify

will be discussed together.

In the state habeas proceeding, Thomas responded to Bermudez's allegations

regarding his right to testify:

> It is the defendant's sole discretion on whether or not to testify in his
> own defense and as such I did not prevent Mr. Bermudez from testifying. If
> Mr. Bermudez would have expressed a desire to testify at anytime then he
> would have taken the stand.
> Though I don't recall any specific conversations, Mr. Bermudez and
> I would have discussed whether his testimony was necessary for the
> guilt/innocence phase of trial. It appears that there were other defense and
> fact witnesses that would have testified that they did not see Mr. Bermudez
> with a knife. Therefore, I may have advised that his own testimony would
> have been redundant. In addition, I may have advised that by testifying he
> would subject himself to questions about other possible criminal acts that
> arose from the same occurrence with his wife and other previous alleged acts
> against his wife. In regard to the punishment phase of trial, I would have
> advised Mr. Bermudez that if he admitted guilt that it could either limit or
> prohibit certain appellate and post conviction relief. Likewise, if Mr.
> Bermudez would have expressed to me that he was guilty of the crime, I
> would have advised him that it would not be prudent to testify during the
> guilt/innocence phase of trial.

(Docket Entry No. 10-21, at 156).

After considering Bermudez's allegations, Thomas's affidavit, and its own

recollections of the trial, the state habeas court found Thomas's affidavit to be credible and

true. (*Id.* at 183). The court then found that Thomas did not prevent Bermudez from

testifying and would have permitted Bermudez to do so had he expressed a desire to testify.

(*Id.* at 184). The court also found that Bermudez did not tell appellate counsel Cheri

Duncan that Thomas had denied him the right to testify at trial so that she could raise the

issue on appeal. (*Id.* at 188). Based on these findings, the state habeas court concluded:

1.  The Court finds that the applicant fails to prove by a preponderance of evidence that his trial counsel's performance fell below an objective standard of reasonableness, or that but for the unprofessional performance of counsel there is a reasonable probability that the outcome for the case would have been different. *Strickland v. Washington,* 466 U.S. 668 (1984); *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Mercado v. State,* 615 S.W.2d 225, 228 (Tex. Crim. App. 1981).

. . .

4.  The applicant fails to provide evidence beyond his mere assertions and a rehash of the issue raised on appeal, that overcomes the presumption that trial counsel made all significant decisions in the exercise of reasonable professional judgment. *Delrio v. State,* 840 S.W.2d 442 (Tex. Crim. App. 1992).

(Docket Entry No. 10-21, at 190).

In this federal habeas proceeding, Bermudez points to no evidence, much less clear and convincing evidence, to support his assertion that he was prevented from testifying. The record does not show that Bermudez told the trial court that Thomas was preventing him from testifying, either during the guilt phase or the punishment phase of the proceedings, or that he raised the issue with appellate counsel. Bermudez's bare and unsupported allegations are legally insufficient to entitle him to habeas relief. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Having failed to overcome the presumption of correctness with regard to the state habeas court's factual findings, Bermudez has failed to show that the state habeas court's decision to reject this claim was objectively unreasonable. He is therefore not entitled to relief on these claims.

18

### 3. Failure to prepare for trial
### (Grounds 1(c), 1(d), 1(h), 1(j) and 1(k))

Bermudez alleges that Thomas provided ineffective assistance by failing to properly prepare for trial or consult with him while doing so. Specifically, he alleges that Thomas failed to file a motion to exclude Bermudez's prior convictions that were more than ten years old, failed to provide discovery to Bermudez and consult him about trial strategy, failed to call character witnesses during the punishment phase, failed to adequately prepare for trial, and failed to research and prepare for legal arguments on issues raised at trial.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In determining reasonableness, a heavy measure of deference is due to counsel's judgment. *Id.* When alleging an inadequate investigation, a petitioner must identify what evidence or information the investigation would have uncovered and how that information would have changed the outcome of the proceeding. *Gregory*, 601 F.3d at 352.

In response to Bermudez's allegations of an inadequate investigation, Thomas asserted:

> I filed a Motion to Produce Exculpatory and Mitigating Evidence, for the purpose of obtaining the appearance of his minor son Antonio Bermudez, III, who the prosecution was suppressing by not providing his address so that he could be subpoenaed. His son was material to his defense because during a 911 call he repeatedly told the operator that Mr. Bermudez did not have a weapon. In addition, it was my practice to use the court's standard discovery order if it utilized one. In regard to a motion in limine prohibiting the mention of Mr. Bermudez's prior convictions and bad acts, it was my practice to make it orally on the record the day of trial along with any other motions in limine.
> I shared all pre-trial discovery results with Mr. Bermudez. The prosecution had an open file policy, which I would periodically review for

19

updates and new material.  Though, I do not recall the specifics of any particular conversation with Mr. Bermudez, there would have been multiple conversations where we discussed the evidence against him.

Mr. Bermudez claimed that there was no weapon involved during the occurrence with his wife.  When I interviewed multiple witnesses who were at the scene, each stated they did not observe Mr. Bermudez with a weapon. Likewise, 911 tapes also indicated that Mr. Bermudez did not have a weapon. I would have advised Mr. Bermudez that we call each of the scene and 911 witness[es] to testify that they did not observe him with a knife or other weapon.  Though I do not recall the specifics of a particular conversation, I would have advised Mr. Bermudez that if the prosecution could not prove a deadly weapon, he could still be found guilty of a lesser included offense, which may include misdemeanor assault or terroristic threat.

Though I do not recall the specifics, I would have vetted potential character witnesses from both Mr. Bermudez's family and other scene witnesses who lived on his property.  It would have been my preference to have at least one character witness testify on his behalf during the punishment phase of trial, assuming they were willing to testify favorably.  I do not recall whether or not character witnesses testified during the punishment phase of trial.

I visited the crime scene in advance of trial and took extensive photographs and interviewed witnesses who lived on the property.  I do not recall if I asked Mr. Bermudez's sister to take additional photographs at a later date.

(Docket Entry No. 10-21, at 156-58).

After considering Bermudez's allegations, Thomas's affidavit, and its own recollections of the trial, the state habeas court found Thomas's affidavit credible and that "the facts asserted therein are true." (*Id.* at 183).  The court then found:

> 8.  The Court finds, based on the Thomas affidavit, that trial counsel did file standard discovery motions and, as was his normal practice, he would make any motion in limine orally, on the record, the day of trial if needed. *Id.* at 3-4.
> 9.  The Court finds, based on the Thomas affidavit, that trial counsel did share all pre-trial discovery gleaned in the case with the applicant. *Id.* at 4.

. . .

20

      14. The Court finds, based on the Thomas affidavit, that trial counsel met with the applicant on multiple occasions, filed pre-trial discovery motions, collected the evidence in the case, reviewed the evidence in the case, vetted potential witnesses, interviewed and subpoenaed three witnesses, planned a defense, visited and photographed the crime scene, and reviewed testimony from a previous hearing held in the primary case. *Id.* at 3-7.

      15. The Court finds, based on the Thomas affidavit, that it is trial counsel's usual practice to vet potential character witnesses including members of the applicant's family and witnesses from the scene. *Id.* at 5.

(Docket Entry No. 10-21, at 184-86). Based on these findings, the state habeas court denied relief.

In this federal habeas proceeding, Bermudez has alleged no facts to support his assertions that Thomas conducted an inadequate investigation or was unprepared for trial. Contrary to Bermudez's assertions, Thomas orally moved to exclude Bermudez's prior convictions that were more than ten years old when the State sought to introduce them during the punishment phase, and the trial court granted that motion in part. (Docket Entry No. 10-17, at 10-15). The record also shows that Thomas called Bermudez's niece, Graciela Cortinas, as a character witness during the punishment phase, contradicting his contention that Thomas called no character witnesses during the punishment phase. (*Id.* at 16-20). Bermudez points to nothing in the record that supports his allegations that Thomas failed to share discovery with him, failed to consult him about trial strategy, failed to call other character witnesses that Bermudez wanted called, or was otherwise unprepared. Bermudez also has not identified the evidence or information that any additional investigation would have uncovered or explained how that information would have changed the outcome of the proceeding. In the absence of such supporting evidence,

Bermudez's allegations are insufficient to trigger habeas relief. *See Gregory*, 601 F.3d at 352; *Ross*, 694 F.2d at 1011. Having failed to overcome the presumption of correctness with regard to the state habeas court's factual findings, Bermudez cannot show that the state habeas court's decision to reject these claims was objectively unreasonable. He is therefore not entitled to relief on these claims.

### 4. Incorrect advice concerning the State's evidence (Ground 1(e))

Bermudez alleges that Thomas provided ineffective assistance by incorrectly advising him that the State could not prove that Bermudez used a knife to commit the assault. (Docket Entry No. 1, at 11). He did not allege, however, how proper advice would have changed the course of the proceedings.

Thomas's affidavit in the state habeas proceeding confirmed that the disputed, dispositive issue at trial was the presence or absence of a knife during the offense. (Docket Entry No. 10-21, at 157). In opening statements, Thomas admitted that the evidence would show that Bermudez assaulted Zapata, but he argued that the evidence would not show that Bermudez used a knife or other weapon. (Docket Entry No. 10-14, at 19-20. He pointed out that none of the witnesses to the assault saw Bermudez with a knife and that the 9-1-1 tapes did not reflect Bermudez had a knife. (*Id.*) Based on the lack of corroborating evidence, Thomas alleged in his affidavit that he advised Bermudez that "if the prosecution could not prove a deadly weapon, he could still be found guilty of a lesser included offense, which may include misdemeanor assault or terroristic threat." (Docket Entry No. 10-21, at 157). The state habeas court found Thomas's affidavit testimony to be credible and

22

concluded that his performance was not deficient. (*Id.* at 185). Specifically, the court found "based on the Thomas affidavit, that trial counsel discussed the effect of a deadly weapon being used and the possibility of a lesser charge if the State could not prove a knife was used in the offense." (*Id.*) Bermudez has offered no clear and convincing evidence to rebut the presumption of correctness of this factual finding.

But even if Bermudez could establish that Thomas's performance in this regard was deficient, Bermudez is not entitled to relief because he has failed to allege or show that he was prejudiced by the deficient performance. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691. The prejudice element "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams*, 529 U.S. at 393 n.17. Generally, a petitioner alleging ineffective assistance of counsel from a failure to properly advise of the strength of the State's case establishes prejudice by showing that a plea offer was rejected or exculpatory evidence was not offered as a direct result of the defendant's lack of knowledge. *See, e.g., United States v. Gonzalez,* 943 F.3d 979, 983 (5th Cir. 2019); *Jackson v. Cain*, No. 12-cv-2132, 2015 WL 5020745 at *4 (W.D. La. Aug. 21, 2015); *Davis v. Quarterman*, No. 3:08-cv-0510-K, 2009 WL 2447827 at *13 (N.D. Tex. Aug. 7, 2009).

Bermudez, however, did not allege prejudice in either his state habeas petition or his federal petition. Bermudez did not allege that he would have accepted the State's pre-trial plea offer had he been properly informed of the strength of the State's evidence. He

did not allege that his decision on whether to testify would have been different had he been properly informed. In short, Bermudez has not shown that the outcome of the proceeding would have been different had Thomas given him more information about the strength of the State's case. In the absence of such evidence, Bermudez cannot establish prejudice and so cannot show that the state habeas court's decision rejecting this claim is objectively unreasonable. He is therefore not entitled to relief on this claim.

### 5.   Failure to accommodate trial counsel's hearing impairment (Ground 1(i))

In his final ineffective assistance claim, Bermudez alleges that Thomas was ineffective for failing to take steps to accommodate his hearing impairment. Bermudez contends that Thomas's failure to account for his hearing impairment and take steps to compensate for it caused Thomas to "miss[] important matters during trial." (Docket Entry No. 1, at 12).

The trial record reflects that on the first day of trial the following occurred during a discussion of an objection at the bench:

> **THE COURT:**  Okay. Of course, all of that is hearsay. So, what is your response? I'm sorry. Are you having trouble hearing, Mr. Thomas?
> **MR. THOMAS:**  Yes, ma'am.
> **THE COURT:**  Okay.

> **(End of Bench Discussion)**

> **THE COURT:**  I'm going to have to send the jury out. We need an afternoon break anyway. So, you may have a recess until 4:00. All rise, please, for the jury.

> **(Jury released)**

> **THE COURT:**  And, ma'am, you may have a break, also. Thank you.

24

Please have a seat.

        Mr. Thomas, it's real important if you don't hear anything that you let me know, if you have trouble hearing at any time.  Because, obviously, you cannot render effective assistance unless you hear everything.

        **MR. THOMAS:**  Sure.

        **THE COURT:**  So, let me know and I will send the jury out.

        **MR. THOMAS:**  Yes, ma'am.

        **THE COURT:**  Okay.  Are you following everything okay?

        **MR. THOMAS:**  Yes, ma'am, I am.

        **THE COURT:**  Okay.

        **MR. THOMAS:**  Just only when --

        **THE COURT:**  Whispering --

        **MR. THOMAS:**  Yeah.

        **THE COURT:**  --  goes on.  Okay.  So, let's do this outside the presence of the jury then.  Do you have any – why don't you repeat what you want to do?

(Docket Entry No. 10-14, at 136-37).  The prosecutor then repeated his argument as to why he believed certain hearsay statements were admissible, and Thomas responded to those arguments.  (*Id.* at 137-39).  The court found the hearsay statements inadmissible and sustained Thomas's objection.  (*Id.* at 139).

        Later, the court again discussed Thomas's hearing impairment with counsel at the bench:

        **THE COURT:**  Hi.  Of course, the child witness had a very soft voice. So, I can see why you were having trouble hearing him; but maybe it would be good if your co-counsel sat next to you so in case there is -- you have a question about something that's said, he could help you with that.  Do you think?

        **MR. ROBERTSON:**  I can do that job.

        **THE COURT:**  You may not have any problem with the last witness, if she is the last witness.  It's just the child was unusually soft.  But I want to make sure you hear everything.  If you don't, stop and let me know; and I will assist you with that.

        **MS. JOHNSON:**  I don't think he hears you right now, Judge.

        **THE COURT:**  Yeah.  When I whisper, I know you can't hear me. Will you tell him?

        **MR. ROBERTSON:**  Yes, Judge, we will.

**THE COURT:** Okay. So, thank you.

(Docket Entry No. 10-15, at 76-77). No further mention of Thomas's hearing impairment

was made on the record.

In the state habeas proceedings, it was undisputed that Thomas had a hearing

impairment; the only question was whether that impairment resulted in ineffective

assistance. In response to Bermudez's allegations, Thomas asserted:

> I do suffer from hearing loss, but it does not limit my ability to communicate
> with either my clients or participate in courtroom proceedings. I was able to
> hear the proceedings at all times, although there was a child witness where I
> had to ask him to repeat some of his responses because he spoke softly. My
> co-counsel Aubrey Robertson was present at counsel table with myself and
> Bermudez and ensured that I was able to hear the proceedings and participate
> fully in the trial.

(Docket Entry No. 10-21, at 157-58).

After considering Bermudez's allegations, Thomas's affidavit, and its own

recollection of the trial proceedings, the state habeas court found:

> 24. The Court finds, based on the Thomas affidavit, that trial counsel
> does suffer some hearing loss, but that he was able to hear and communicate
> effectively during his representation of the applicant. *Thomas affidavit* at 5.
> 25. The Court finds, based on the Thomas affidavit, that trial counsel
> was able to hear proceedings during the applicant's trial with the exception
> of the testimony of a child who spoke softly and so he sought to have answers
> repeated. *Id.*
> 26. The Court finds, based on the Thomas affidavit, that trial counsel
> had co-counsel at trial, Aubrey Robertson, to assist him and help him
> hear/clarify everything during proceedings and participate fully in the trial.
> *Id.*

(*Id.* at 188-89). The court also found that the issue of whether Thomas had provided

ineffective assistance due to his hearing impairment had been raised and rejected on direct

appeal. (*Id.* at 188). Based on these findings, the state habeas court concluded that

26

Bermudez had not shown Thomas's performance was deficient or that Bermudez was prejudiced. (*Id.* at 189-90).

In this federal habeas proceeding, Bermudez has not pointed to any evidence in the record to support his contention that Thomas's hearing impairment affected his representation of Bermudez. Bermudez does not identify the alleged "important matters" that he contends Thomas missed, and the record does not show that Thomas failed to raise proper objections or that he made inappropriate arguments. Nothing in the record supports Bermudez's claim that Thomas "missed important matters," and Bermudez's bare allegations are insufficient, standing alone, to entitle him to habeas relief. *See Ross*, 694 F.2d at 1011. Therefore, Bermudez has failed to overcome the presumption of correctness with regard to the state habeas court's factual findings concerning the effect of Thomas's hearing impairment, and the state habeas court's determination that Thomas provided effective assistance was not objectively unreasonable  Having failed to meet his burden of proof, Bermudez is not entitled to relief on this claim.

### B.    Denial of due process due to shackling. (Ground Two)

In his second claim for relief, Bermudez contends that he was denied due process and a fair trial because he was shackled during trial in view of the jury. (Docket Entry No. 1, at 14). He maintains that because the shackles were visible in the courtroom and because the case involved a violent crime, the shackles "posed a threat to the fairness of the fact-finding process" that "affected the jury's judgment." (*Id.*). Bermudez attached to his petition an affidavit from his sister supporting his allegations. (*Id.* at 46-47).

The Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri,* 544 U.S. 622, 629 (2005). However, the use of restraints does not undermine the presumption of innocence, and no specific finding of a state interest is required, if the restraints are obscured from the view of jurors because only "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." *Id.* at 630; *Chavez v. Cockrell,* 310 F.3d 805, 808–09 (5th Cir. 2002). Moreover, the Fifth Circuit has long held that "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." *United States v. Diecidue,* 603 F.2d 535, 549 (5th Cir. 1979). On collateral review of a state conviction, a federal court will grant habeas relief only when the use of restraints had "a substantial and injurious effect or influence in determining the jury's verdict." *Hatten v. Quarterman,* 570 F.3d 595, 604 (5th Cir. 2009) (quoting *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007)). Further, overwhelming evidence of a petitioner's guilt may be sufficient to render harmless any error in shackling a defendant. *Id.*

In the state habeas proceeding in this case, both Thomas and appellate counsel Duncan submitted affidavits addressing Bermudez's allegation that he was shackled in front of the jury. Thomas alleged:

> It was the general practice of the court's bailiffs, while outside the presence of the jury, to bring defendants restrained from the holding cell to inside the courtroom and place them behind counsel's table. Once seated behind

counsel's table the bailiff would remove any handcuffs and leave any leg shackles on.  Any leg shackles would be shielded from the view of the jury by counsel's table, which three sides extended all the way to the floor.  To the best of my recollection, I do not believe any member of the jury saw Mr. Bermudez restrained.

(Docket Entry No. 10-21, at 159).

In her affidavit, appellate counsel Duncan alleged that in preparing Bermudez's motion for new trial and appellate brief, she met with Bermudez in person and spoke with Thomas on the phone.  (*Id.* at 148).  She also alleged that she spoke with Bermudez's sister on the phone at least once.  (*Id.*).  On the issue of shackling, Duncan alleged:

I do not recall Mr. Bermudez telling me that he was shackled during trial in front of the jury.  None of my notes of conversations relating to this case reflect any mention of Mr. Bermudez being shackled in front of the jury.

(*Id.* at 151).

After considering Bermudez's allegations, his sister's affidavit, the affidavits of Thomas and Duncan, and its own recollection of the trial proceedings, the state habeas court found Thomas and Duncan's affidavits to be credible and that "the facts asserted therein are true."  (*Id.* at 183).  The court then found:

16.  The Court finds that the applicant's second claim, which is based on the applicant's sister's statement, that his due process rights were violated because the jury saw him shackled in the court room on two occasions.  *Writ application* at 8.

17.  The Court finds, based on the Thomas affidavit, that it is the general practice of the 184th District Court to bring defendants into the courtroom with both wrist and leg shackles, removing the wrist cuffs once the defendant is seated where his legs are hidden from view from the jury.  *Thomas affidavit* at 6.

18.  The Court finds, based on the Thomas affidavit, that trial counsel does not believe that the jury saw the applicant restrained in shackles.  *Id.*

. . .

29

>20.   The Court finds, based on the Duncan affidavit, that the applicant did not tell appellate counsel that he was shackled in front of the jury, nor was there any mention of it in the official court records, in order for it to be raised as a claim. *Duncan affidavit at 4.*

(*Id.* at 187).   The court concluded that Bermudez had failed "to provide credible proof that members of the jury actually viewed [him] in restraints, which is required to show an error was made." (*Id.* at 190-91).   The state habeas court denied relief on this basis.

In his federal petition, Bermudez has not pointed to clear and convincing evidence to rebut the state habeas court's finding that jurors did not see him in shackles.   In his response, Bermudez points to his sister's affidavit and argues that the state habeas court should have found her more credible than Thomas and Duncan.   (Docket Entry No. 33, at 10-11).   However, the credibility determinations of state habeas courts are entitled to deference on federal habeas review.   *See Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006) ("A credibility determination by the state habeas court also is afforded deference."); *Pippin*, 434 F.3d at 792 (holding that state habeas court credibility determinations are "virtually unreviewable" by the federal courts).   And while a federal habeas court can disagree with a state court's credibility determination, it may do so only if the state court's decision was unreasonable or its factual premise was incorrect by clear and convincing evidence.   *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Here, review of the record does not reveal clear and convincing evidence that the state habeas court's factual finding that the jurors did not see Bermudez in shackles is incorrect, nor does it show that the state court's decision was objectively unreasonable. Bermudez is therefore not entitled to relief on this claim.

30

### C.   Ineffective Assistance of Appellate Counsel
####     (Ground 4)

In his fourth claim for relief, Bermudez alleges that appellate counsel Duncan provided ineffective assistance because she failed to include multiple claims of ineffective assistance of trial counsel and trial court error in Bermudez's motion for new trial, thus failing to preserve them for direct appeal.  (Docket Entry No. 1, at 17).

A claim of ineffective assistance of appellate counsel is governed by the test set out in *Strickland*, which requires the defendant to establish both constitutionally deficient performance and actual prejudice.  *See Smith v. Murray*, 477 U.S. 527, 535–36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal).  To establish that appellate counsel's performance was deficient, the defendant must show that counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  The defendant must also establish prejudice by demonstrating a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal."  *Id.*

A reasonable appellate attorney has an obligation to research the relevant facts and law and make informed decisions as to whether any identified issues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.  However, the Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).  When an attorney fails to adequately brief an issue on direct appeal, the petitioner must show "that the appeal would have had, with reasonable

probability, a different outcome if the attorney adequately addressed the issue." *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001) (citing *Jones v. Jones*, 163 F.3d 285, 302 (5th Cir. 1998)).  The petitioner must also show that the deficient performance led to a fundamentally unfair and unreliable result.  *Id.* at 475 (citing *Goodwin v. Johnson*, 132 F.3d 162, 176 (5th Cir. 1997)).

In his federal habeas petition, Bermudez alleges that Duncan should have included in the motion for new trial "the fact that [he] desired to testify during both guilt/innocence and punishment phase of the trial" and that he was "prevented from testifying at either stage of the trial." (Docket Entry No. 1, at 17).  Bermudez alleges that Duncan also failed to argue that Bermudez's sister "saw [him] shackled in the courtroom during trial in the presence of the jury." (*Id.*).

In response to these allegations, Duncan alleged in her state habeas affidavit that she met with Bermudez in person, spoke with Thomas by phone, and spoke by phone with Bermudez's niece and sister. (Docket Entry No. 10-21, at 148).  She also alleged:

> After I received the record on appeal, I read the full record, line by line, looking for reversible error.  As is my usual practice, I made detailed hand written notes as I read Mr. Bermudez record, to review and assist me in writing the brief on appeal.
> In particular, I noted that at the start of the trial, Mr. Bermudez was brought into the courtroom after a pretrial conference that he should have been present for.  The conference concerned motions in limine, the need for Mr. Bermudez' son to appear and testify, the election of punishment by the court rather than the jury, and the court's question about voir dire on potential lesser included offenses.  I did not believe I could make this an issue, however, since Mr. Bermudez' absence did not appear to cause any actual harm or prejudice.  Specifically, concerning his punishment election, [t]he reporter's record showed that Mr. Bermudez' counsel conferred with his client about the election, and the clerk's record showed that Mr. Bermudez signed the written election, i.e., Defense Motion at Time of Entering Plea of

Not Guilty, which designated the judge to assess punishment.

I also noted that defense counsel requested a jury instruction regarding the lesser offense of assault, a Class C misdemeanor, which the court denied. Instead, the jury was charged on the indicted offense of aggravated assault with a deadly weapon, and the lesser included offense of terroristic threat, a Class A misdemeanor as alleged in this case. I believed it was error for the court to deny the requested charge, but I did not believe I could successfully establish sufficient harm to qualify as reversible error. The jury found Mr. Bermudez guilty of the most serious offense, aggravated assault with a deadly weapon. Neither terroristic threat nor misdemeanor assault include the element of a deadly weapon. Therefore, I did not believe I could establish on appeal that the jury might have found Mr. Bermudez guilty of misdemeanor assault, since they clearly believed he used or displayed a deadly weapon.

(*Id.* at 149-50). Duncan did not recall, nor did her notes reflect, that Bermudez told her that he wanted testify at trial, nor did she recall either Bermudez or his sister raising the issue of Bermudez being shackled while the jury was in the courtroom. (*Id.* at 150).

The state habeas court found Duncan to be credible and the facts alleged in her affidavit to be true. (*Id.* at 183). Based on Bermudez's allegations, Duncan's affidavit, and its own knowledge of the trial court proceedings, the state habeas court then found:

19. The Court finds that the applicant's fourth claim is that he was denied effective assistance of appellate counsel because Cheri Duncan failed to raise claims of due process violations regarding him being shackled and being denied his right to testify. *Writ application at 12.*

20. The Court finds, based on the Duncan affidavit, that the applicant did not tell appellate counsel that he was shackled in front of the jury, nor was there any mention of it in the official court records, in order for it to be raised as a claim. *Duncan affidavit at 4.*

21. The Court finds, based on the Duncan affidavit, that the applicant did not tell appellate counsel that he desired to testify at trial and was denied in order for it to be raised as a claim. *Id.*

22. The Court finds, based on the Duncan affidavit, that appellate counsel considered several options when determining what, if any grounds, the applicant had to raise on a direct appeal, including ineffective assistance of counsel, failure to have the applicant present during oral pretrial motions, and a jury instruction concern. *Id.* at 2-3.

> 23.   The Court finds, based on the Duncan affidavit, that appellate counsel determined that legally, the most substantive claim for appeal was the ineffective claim due to trial counsel's alleged hearing loss that deprived him of effective counsel. *Id.* at 2.

(*Id.* at 187-88).  Based on those findings, the state habeas court concluded:

> 6.   The Court finds that appellate counsel's approach on appeal did not fall outside prevailing professional norms and that appellate counsel does not have a duty to raise all "colorable" claims suggested by a client. *Jones v. Barnes,* 463 U.S. 745,754 (1983).
> 7.   The applicant fails to provide sufficient evidence to support his claim that appellate counsel's performance was deficient and there is a reasonable probability that the results of the case would have been different but for counsel's performance. *Ex parte Butler,* 884 S.W.2d 782, 783 (Tex. Crim. App. 1994).

(*Id.* at 190-91).

The state habeas court found that Duncan made strategic decisions about which claims to raise on appeal. (*Id.*).  Counsel's conscious and informed decisions on tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel. *See Burger v. Kemp*, 483 U.S. 776, 784 (1987) (reiterating that "the 'process of winnowing out weaker claims on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy" (quoting *Murray*, 477 U.S. at 536 (1986))).  This Court affords a heavy measure of deference to the informed strategic decisions made by counsel.

Duncan explained her strategic reasons for selecting the issues to be raised in the motion for new trial and appellate brief, and the state habeas court found her explanations credible. (Docket Entry No. 10-21, at 183).  In response, Bermudez points to Duncan's assertion that she "did not recall" him telling her he was shackled to argue that her

testimony was conditional and so should be rejected. (Docket Entry No. 33, at 20-21). But Bermudez does not point to clear and convincing evidence to show that the state habeas court's decision was unreasonable or its factual premise was incorrect by clear and convincing evidence. *See Miller-El*, 537 U.S. at 340. Thus, the state habeas court's credibility determination is entitled to deference. Because Bermudez has not met his burden of rebutting the state habeas court's credibility finding, it must be accepted as correct on federal habeas review.

Based on the facts it found credible, the state habeas court concluded that Bermudez had received reasonably effective assistance of appellate counsel. The Court of Criminal Appeals expressly based its denial of habeas relief on this finding. The state court's decision as to this claim is a reasonable application of federal law, and the court reasonably applied the law to the facts. Bermudez has not shown a basis for the relief he seeks in this claim.

### D.   Denial of due process as to Bermudez's motion for new trial (Ground 5)

In his final claim, Bermudez alleges that he was denied due process when the trial court denied his motion for new trial without a hearing. This claim is not properly before this court because Bermudez failed to exhaust his state court remedies. And even had he done so, the claim is not cognizable on federal habeas review.

"[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." *Henry v. Cockrell*, 327 F.3d 429, 432 (5th Cir. 2003) (quoting *Orman v. Cain,* 228 F.3d

616, 619-20 (5th Cir. 2000)); *see also* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."). This exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). "The purpose of exhaustion 'is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court.'" *Ruiz v. Quarterman*, 460 F.3d 638, 642-43 (5th Cir. 2006) (quoting *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 10 (1992)). Exceptions exist only when there is no available State corrective process or when that process is ineffective to protect the petitioner's rights in his particular circumstances. *See* 28 U.S.C. § 2254(b)(1)(B).

To exhaust state remedies under section 2254(b)(1)(A), a habeas petitioner must fairly present "the substance of his claim to the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986). In Texas, this requires the petitioner to present his claims to the Texas Court of Criminal Appeals by filing an appeal followed by a petition for discretionary review or by filing an application for a writ of habeas corpus. *See Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990) (exhaustion may be accomplished directly in a petition for discretionary review or collaterally in a habeas corpus petition); *see also Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by

pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings."). A federal habeas petitioner has not exhausted his state remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). A reviewing court may raise a petitioner's failure to exhaust *sua sponte*. *Tigner v. Cockrell*, 264 F.3d 521, 526 n.3 (5th Cir. 2001).

In this case, the record plainly shows that Bermudez did not attempt to present the substance of this claim to the Texas state courts. He did not raise the trial court's refusal to hold a hearing on his motion for new trial as an issue in either his direct appeal or his state habeas petition. Because Bermudez never presented the substance of this claim to the Court of Criminal Appeals, he has not exhausted his state remedies. Therefore, this claim must be dismissed for lack of exhaustion.

Further, even if Bermudez had properly pursued his state remedies on this claim, he would not be entitled to relief from this Court. "An error in the application of state law by the trial court does not provide grounds for habeas relief." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Hill v. Black*, 887 F.2d 513, 522 (5th Cir. 1989). Here, Bermudez was not entitled as a matter of law to a hearing on his motion for new trial. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993) (holding that the right to a hearing on a motion for new trial is not an "absolute right"). Hence, any alleged abuse of discretion in the trial court's refusal to hold a hearing would be an error in state procedural law only—not an error of constitutional dimension. Because this claim is not cognizable in a federal habeas proceeding, Bermudez is not entitled to the relief he seeks.

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Habeas corpus actions under section 2254 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El*, 537 U.S. at 335-36. Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 276 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). When the denial of relief is based on procedural grounds the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). Because Bermudez has not shown that reasonable jurists would find the Court's resolution of the constitutional issues debatable or wrong, this Court will not issue a certificate of

appealability.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.     The respondent's motion for summary judgment, (Docket Entry No. 19), is

**GRANTED**.

2.     The petition for writ of habeas corpus is **DENIED**, and this case is

**DISMISSED** with prejudice.

3.     A certificate of appealability is **DENIED**.

The Clerk shall also send a copy of this Order to the parties.

SIGNED at Houston, Texas on _____ JUN 1 7 2021 _____.

_____
ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE

39